IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOEVAL JONES,                                          OPINION and ORDER

       Plaintiff,                                    15-cv-56-bbc

   v.

TODD RUSSELL and JOHN O'DONOVAN,

       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Joeval Jones, an inmate at the Waupun Correctional Institution, has filed this civil rights lawsuit under 42 U.S.C. § 1983 against defendants Todd Russell and John O'Donovan, two correctional officers at the Waupun prison.   Plaintiff contends that defendants Russell and O'Donovan violated his freedom of speech by confiscating an affidavit he sent to another inmate and punishing him on the grounds that the affidavit was "gang-related."   Additionally, plaintiff contends that defendants violated his due process rights by failing to provide him fair notice that sending the affidavit to a fellow inmate was prohibited and could result in discipline.

The parties have filed cross-motions for summary judgment on both of plaintiff's claims.  Moreover, plaintiff has moved for summary judgment on the ground that defendants are not entitled to qualified immunity.  Defendants have opposed plaintiff's motion for a finding that defendants are not entitled to qualified immunity, but only with respect to

1

defendant Russell. Finally, defendants have moved for summary judgment on whether plaintiff is entitled to the various forms of relief he is seeking.

I will enter summary judgment in plaintiff's favor on both his freedom of speech claim and his due process claim. Defendants have failed to carry their burden of demonstrating that there is a valid, rational connection between their decision to confiscate and destroy plaintiff's affidavit and any legitimate penological interest. With respect to plaintiff's due process claim, defendants have failed to raise a genuine issue of fact with respect to whether plaintiff had fair notice that sending the affidavit could result in punishment.

I will also enter summary judgment in plaintiff's favor on the question whether defendant Russell is entitled to qualified immunity. A reasonable prison official in Russell's position would have understood that he could not confiscate plaintiff's affidavit and issue plaintiff a conduct report unless doing so furthered a legitimate penological interest; a reasonable prison official in Russell's position would have known also that plaintiff was entitled to fair notice that sending the affidavit to another inmate could result in punishment under DOC § 303.20. As for defendant O'Donovan, by failing to respond to plaintiff's argument, defendants concede implicitly that he is not entitled to qualified immunity.

This leaves only the question whether plaintiff is entitled to any compensatory damages and punitive damages. This question and the amount of any damages to which plaintiff is entitled will have to be determined at a trial.

From the parties' proposed facts, I find that the following are relevant and not

2

genuinely disputed.

UNDISPUTED FACTS

On January 15, 2013, two Waupun inmates, Tingia Wheeler and Frederick Jones, received conduct reports for allegedly holding leadership positions in the Gangster Disciples gang and actively participating in the organization and recruitment of its members. Relying on the allegations in these conduct reports, Waupun prison officials held disciplinary hearings and found that both Wheeler and Jones had violated Wisconsin Administrative Code § DOC 303.20, which prohibits unapproved "group activity," participation in an "inmate gang" and gang recruitment. (The Wisconsin Administrative Code was revised in January 2015. As a result of these revisions, the code provisions at issue were renumbered and are now found at DOC § 303.24. However, I will continue to refer to the relevant code section as DOC § 303.20.) After their respective disciplinary hearings, Wheeler and Jones filed a joint petition for a writ of certiorari in a Wisconsin state court seeking review of the disciplinary proceeding.

After plaintiff heard that Wheeler had been disciplined for alleged gang activity and was challenging the disciplinary decision, he prepared an affidavit for Wheeler to use in support of Wheeler's state court certiorari petition. In the affidavit, plaintiff stated that he was a former high-ranking member of the Gangster Disciples and that he had previously offered Wheeler a position in the gang, but Wheeler refused to join because of his religious beliefs. Plaintiff further explained that he had found it "extremely disrespectful" that

3

Wheeler would refuse the opportunity to join the Gangster Disciples, so he put the word out to the gang's members at the Waupun prison that Wheeler should be "eradicated."  Certain gang members chose to "eradicate" Wheeler by lying to prison officials about Wheeler's gang involvement in an effort to have Wheeler disciplined and segregated.  In essence, plaintiff averred that gang members had orchestrated a misinformation campaign intended to give prison officials the false impression that Wheeler was significantly involved in the Gangster Disciples.

After drafting the affidavit, plaintiff asked WCI Program Assistant Angelia Kroll to notarize it before he sent it to Wheeler.  In his request, he explained that the affidavit was intended to "help a prisoner named Tingia Wheeler in a writ of certiorari action that he has pending in Court" and that the contents of the affidavit were "relevant to the merits of [Wheeler's] certiorari action."  He added that he "[did not] know the certiorari case number," but that Wheeler intended to insert it after he received the affidavit.  Plaintiff's request for notary services was approved and on May 5, 2014, Kroll went to plaintiff's cell and notarized the affidavit.  Plaintiff then sent the affidavit to Wheeler through the prison's "inmate-to-inmate" mail system.

Later that day, defendant Russell was sorting the inmate-to-inmate mail and discovered the letter from plaintiff to Wheeler.  Russell read the affidavit and noticed that it referred to gang activity, so he confiscated the letter and brought it to Security Threat Group Specialist Bret Mierzejewski to review.  Mierzejewski told Russell that he believed the affidavit violated DOC § 303.20, which prohibits "group resistance and petitions."

4

On the basis of what Russell himself read in the affidavit, as well as the opinion of Specialist Mierzejewski that the affidavit violated DOC § 303.20, Russell issued plaintiff a conduct report (CR #2422807) on May 16, 2014 in which Russell alleged that plaintiff had violated DOC § 303.20.  Russell wrote in the conduct report that he questioned whether plaintiff was telling the truth in the affidavit or was instead lying in an effort to exculpate Wheeler from alleged wrongdoing.  The conduct report also stated that plaintiff was a "member of the gangster disciples, and due to his continuous involvement with this security threat group he poses a threat to inmates and staff, and he continues to try to disrupt the climate and operations of Waupun Correctional Institution."

On June 3, 2014, a disciplinary hearing was held at which defendant O'Donovan served as the hearing officer.  At the hearing plaintiff argued that he was not lying in the affidavit, and that although the incidents described in the affidavit implicated him in gang activity, he had already been disciplined for those activities.  Defendant O'Donovan stated that plaintiff was not being disciplined for lying, so the veracity of the affidavit was irrelevant.  However, defendant O'Donovan did find that "it [was] more likely than not that [plaintiff] was/is participating in gang activity, soliciting individuals to be part of the gang, and that he was organizing a gang" in violation of DOC § 303.20.  O'Donovan ordered that plaintiff be placed in disciplinary segregation for 360 days and that the affidavit be destroyed.  Plaintiff's appeal to Waupun's warden was denied.

OPINION

5

The parties have filed cross-motions for summary judgment on plaintiff's claims that defendants violated his First Amendment right to free speech and his Fourteenth Amendment right to due process by destroying his affidavit and punishing him for attempting to send it to Wheeler.  I will address these two claims before turning to defendants' right to qualified immunity and the relief available to plaintiff.

A. Plaintiff's First Amendment Claim

Plaintiff contends that defendants violated his First Amendment rights by destroying his affidavit and punishing him for attempting to send it to Wheeler.  A prison's speech restrictions violate the First Amendment when they are not "reasonably related to legitimate penological interests."  Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004).  Determining whether a speech restriction is "reasonably related to legitimate penological interests" requires the courts to analyze the factors set forth in Turner v. Safley, 482 U.S. 78 (1987), which include: (1) whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; (2) whether the prisoner has alternative means for exercising the alleged constitutional right at issue; (3) what impact accommodation of the prisoner's rights will have on prison administration; and (4) whether there are other ways that prison officials can achieve the same goals without encroaching on the prisoner's rights.  Id. at 89-91.  Considering these factors, I find that plaintiff is entitled to summary judgment on his claim that defendants violated his free speech rights.

Although all of the Turner factors are important, the first weighs particularly heavily

6

in the balance and is often viewed as a "threshold" factor that can be dispositive for either party.  Singer v. Raemisch, 593 F.3d 529, 534 (7th Cir. 2010) ("The four factors are all important, but the first one can act as a threshold factor regardless which way it cuts.").  For example, a strong connection between the speech restriction and an important penological interest can obviate the need to examine the latter three Turner factors, Mays v. Springborn, 575 F.3d 643, 648 (7th Cir. 2009) ("Where . . . there is only minimal evidence suggesting that a prison's regulation is irrational, running through each factor at length is unnecessary."), while the complete lack of a valid, rational connection justifies entering judgment in favor of the plaintiff.  Turner, 482 U.S. at 89-90 ("[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.").  In evaluating whether there is a valid, rational connection between a speech restriction and the prison's legitimate penological interests, the initial burden of proof rests on the defendant prison officials. Singer, 593 F.3d at 536-37.  However, once defendants offer a "plausible explanation" for the speech restriction, the burden then shifts to plaintiff to present evidence undermining the prison officials' proffered explanation.  Id.  Here, defendants have failed to carry their initial burden of presenting a plausible explanation for why they believed it necessary to restrict plaintiff's speech.

Defendants attempt to justify their decision to confiscate plaintiff's affidavit and punish him by invoking the specter of prison gangs.  Specifically, they assert that the restriction furthered their penological interest in "maintaining internal prison security

through the restriction of gang activity and communications."  Without a doubt, prison gangs present a significant threat to prison security: courts have held universally that prison officials have a legitimate penological interest in disrupting gang-activity and preventing gangs from forming.  Wilkinson v. Austin, 545 U.S. 209, 227 (2005) ("Clandestine, organized, fueled by race-based hostility, and committed to fear and violence as a means of disciplining their own members and their rivals, gangs seek nothing less than to control prison life and to extend their power outside prison walls."); Rios v. Lane, 812 F.2d 1032, 1037 (7th Cir. 1987) ("[I]t is difficult to conceive of a single factor more detrimental to penological objectives than organized gang activity.").  However, identifying a legitimate penological interest is only a first step toward establishing that the speech restriction was justified; defendants must also show a valid connection between their restriction on plaintiff's speech and their concerns over the proliferation of prison gangs.  Shimer v. Washington, 100 F.3d 506, 509-10 (7th Cir. 1996) (under Turner, "the prison administration must proffer some evidence to support its restriction of . . . constitutional rights. The prison administration cannot avoid court scrutiny by reflexive, rote assertions."); DeMallory v. Cullen, 855 F.2d 442, 448 (7th Cir. 1988)("Generalized security concerns, however, are insufficient.").  Defendants' arguments fall short of bridging the gap between their decision to confiscate and destroy plaintiff's affidavit and their interest in maintaining security by restricting the growth of gangs and gang-activity.

Defendants struggle to draw either a clear or a direct connection between their proffered interest in maintaining security through the elimination of prison gangs and their

restrictions on plaintiff's speech.  In their briefs, defendants simply assert that the affidavit was written by a member of the Gangster Disciples, that it describes the structure of the organization and describes a "violent gang-related incident."   This may be true, but defendants do not explain how this justifies their decision to seize the affidavit and punish plaintiff for attempting to send it to Wheeler.  Caldwell v. Miller, 790 F.2d 589, 598 (7th Cir. 1986) ("[T]he governmental interest in support of a restrictive policy must be sufficiently articulated to allow for meaningful review of the regulation in question and its effect on the inmate's asserted rights.").

Gangs are a problem because they have the potential to threaten prison security. Therefore, a "gang-related" document is punishable only to the extent that it implicates the prison's security interests in some way.  Id. at 597 ("It is critically important that the record reveal the manner in which security considerations are implicated by the prohibited activity."). This court has previously held that prison officials cannot censor any and all speech they deem objectionable on the basis of the bald assertion that the speech is "gang-related," without explaining how it might jeopardize the prison's security interests.  Koutnik v. Berge, No. 03-c-345-c, 2004 WL 1629548, at *7 (W.D. Wis. July 19, 2004).  As plaintiff correctly points out, the briefs he has filed in this case, as well as this opinion, are "gang-related" in some sense, but that does not give defendants the right to confiscate and destroy either plaintiff's briefs or this court's opinion.

In addition to their general assertion that plaintiff's affidavit contained "gang-related" information, defendants also raise the possibility that plaintiffs' affidavit could have

contained coded messages to Wheeler. In support of this justification, they assert that prisoners often hide prohibited gang communications in documents that superficially appear to be related to legal matters. However, defendants do not contend that plaintiff's affidavit contained a coded message in fact; they say only that the affidavit *could have* contained code. Defendants' speculative concern about code does not justify their decision to confiscate plaintiffs' affidavit. If it did, prison administrators could confiscate any prisoner communications on the basis that the communication *might* contain coded messages that are simply too sophisticated for the prison to identify or decipher. <u>Koutnik</u>, 2004 WL 1629548 at *8 ("*Any* letter that an inmate sends out of the prison *could* be encoded with nefarious messages, but this speculative possibility would not justify a ban on all outgoing mail.").

Ultimately, defendants have failed to connect their decision to confiscate plaintiff's affidavit to a legitimate penological interest. A speech restriction that is not connected to a valid interest necessarily violates the First Amendment. Therefore, it is not necessary to consider the remaining three <u>Turner</u> factors. <u>E.g.</u>, <u>Salahuddin v. Goord</u>, 467 F.3d 263, 274 (2d Cir. 2006)("The first <u>Turner</u> 'factor' is more properly labeled an 'element' because it is not simply a consideration to be weighed but rather an essential requirement.")(citing <u>Turner</u>, 482 U.S. at 89 and <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342. 350 (1987)). Even if it were necessary to consider the remaining factors, they support plaintiff as well.

For instance, the second <u>Turner</u> factor is whether plaintiff had alternative means to engage in the speech that defendants have restricted. <u>Turner</u>, 482 U.S. at 90. Defendants assert that plaintiff could have exercised his protected speech rights by sending his affidavit

10

directly to the court handling Wheeler's writ of certiorari action.  This argument, however, misconstrues the nature of plaintiff's speech.  Although the ultimate audience for his affidavit was the court, at the time the affidavit was confiscated and destroyed, plaintiff's audience was Wheeler.  Defendants have not presented a viable alternative means for allowing Wheeler to see the draft affidavit plaintiff intended to proffer in the lawsuit Wheeler filed related to his gang membership.

The third and fourth Turner factors also support plaintiff.  These two factors look to "the impact accommodation of the asserted constitutional right will have on guards and other inmates" and whether there are viable alternatives for protecting the prison's legitimate penological interests.   Turner, 482 U.S. at 90. Contrary to defendant's contention, accommodating plaintiff's asserted right would not threaten prison security because the accommodation he is seeking is merely what the Constitution requires: that prisoners be allowed to communicate with one another unless the prison reasonably believes that such communications threaten one of its legitimate penological interests.  The prison already reviews all inmate mail, allows prisoners to communicate and coordinate legal matters and also allows prisoners to send mail to each other using the prison's mail system.  Prisoners also accept the fact that their mail is subject to inspection. The only "accommodation" plaintiff is demanding—and the only one he is entitled to in this case—is that prison officials justify their speech restrictions by connecting them to a legitimate penological interest.

Accordingly, I will enter summary judgment in plaintiff's favor on his First Amendment claim against defendants.

B. Plaintiff's Due Process Claim

Plaintiff also contends that his Fourteenth Amendment right to due process was violated because he was not given fair notice that preparing and sending the gang-related affidavit could result in the severe punishment he received.  The Court of Appeals for the Seventh Circuit has held that in the prison context, regulations must be sufficiently definite to give prisoners of ordinary intelligence reasonable notice of what conduct is prohibited. Rios v. Lane, 812 F.2d 1032, 1038 (7th Cir. 1987) ("It is a fundamental precept of constitutional law . . . that a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process law."); Toston v. Thurmer, 689 F.3d 828, 832 (7th Cir. 2012) ("A deprivation of liberty without fair notice of the acts that would give rise to such a deprivation violates the due process clause[.]"). Plaintiff argues that he was deprived of due process because he was not given fair notice that he could be punished for sending the affidavit to Wheeler.  I agree.

1. Was plaintiff deprived of a protected interest?

Before I address whether plaintiff had "fair notice," I must address the threshold issue whether he was deprived of the type of "life, liberty, or property" interests protected by the due process clause.  Citing Marion v. Columbia Correctional Institution, 559 F.3d 693 (7th Cir. 2009), plaintiff argues that his 360-day stint in disciplinary segregation for this incident was an actionable deprivation of his liberty interests.  Id. at 699 ("[P]eriods of confinement

12

that approach or exceed one year may trigger a cognizable liberty interest without any reference to conditions.").   Defendants do not disagree with plaintiff on this point. Accordingly, I find that plaintiff has established that he was deprived of an interest protected by due process.

2. Was plaintiff afforded due process?

Having determined that defendants deprived plaintiff of a protected liberty interest, I turn to the question whether plaintiff was afforded due process in connection with this deprivation.  Although prison inmates are entitled to various procedural protections before they can be deprived of an interest protected by due process, plaintiff's claim is limited to whether defendants gave him "fair notice" of the type of conduct punishable under DOC § 303.20 before his alleged violation of that regulation.

As an initial matter, I note that the Court of Appeals for the Seventh Circuit has previously held in Koutnik v. Brown, 456 F.3d 777, 782-83 (7th Cir. 2006), that DOC § 303.20 is not unconstitutionally vague "on its face."  However, plaintiff is not asserting that DOC § 303.20 is facially invalid.   Instead, plaintiff contends that DOC § 303.20 is unconstitutional "as applied" to the prison's decision to punish him for preparing and sending his affidavit to Wheeler.  The Seventh Circuit's decision in Toston v. Thurmer, 689 F.3d 828 (7th Cir. 2012) confirms that Koutnik did not close the door on an "as applied" challenge to DOC § 303.20.  Toston, 689 F.3d at 831-32 (concluding that DOC § 303.20 "would not have alerted [plaintiff] to the unlawfulness" of copying an allegedly "gang-

13

related" passage from a book in the prison library, but remanding for further proceedings on whether plaintiff was deprived of a liberty interest).

To determine whether the prison gave plaintiff fair notice that sending his affidavit to Wheeler was prohibited, I begin with the language of the regulation plaintiff was deemed to have violated.  Defendants are notably ambiguous regarding the specific subpart of DOC § 303.20 that they say plaintiff violated.  For example, during plaintiff's disciplinary hearing, they cited all three subparts of DOC § 303.20 as support for their decision to punish plaintiff, but they did not explain how *any* one of these subparts prohibited plaintiff from sending the subject affidavit.  Their summary judgment briefs are similarly nebulous.  The most defendants say is that DOC § 303.20 sets forth a general prohibition on "group petitions" and "gang activity."  Accordingly, I am forced to consider each of DOC § 303.20's subparts to determine whether any of those subparts give plaintiff fair notice that his conduct was prohibited by the regulation. I find that none do.

As an initial matter, neither subpart (1), which prohibits unapproved "group activity," nor subpart (2), which prohibits prisoners from "joining in any group petition or statement," can reasonably be read as providing notice that sending an affidavit to a fellow prisoner for use in a court case is a prohibited activity.  Although subpart (3) contains a general prohibition on possessing "any written materials, symbols or symbolism related to a security threat group," this prohibition is also too vague to give a reasonable prisoner notice that "gang-related" affidavits such as the one plaintiff prepared are prohibited.

As an initial matter, subpart (3)'s breadth and its use of the phrase "related to" is

14

problematic.  When construed literally, the limiting phrase "related to" loses all meaning because "really, universally, relations stop nowhere."  New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995) (construing ERISA's preemption of state laws that "relate to" employee benefit plans)(internal quotations omitted).  A reasonable prisoner could not expect prison officials to adopt a policy of construing DOC § 303.20(3) literally and strictly because such a policy would be unconstitutionally overbroad.  Plaintiff was undoubtedly justified in assuming that despite the superficial breadth of DOC § 303.20(3), there must be some types of ostensibly "gang-related" documents that prisoners are allowed to possess.

In some situations, prisons can avoid due process problems related to the application of otherwise vague regulations by showing that the prisoners received fair notice of the type of conduct that was proscribed from other sources.  For example, in Meyers v. Aldredge, 492 F.2d 296 (3d Cir. 1974), the Court of Appeals for the Third Circuit held that disciplining prisoners for violating a rule that prohibited "conduct prejudicial to the good order, security and safety of the community" did not violate due process when prisoners were warned in advance that engaging in certain actions would violate the rule.  Id. at 309-10.  Here, however, defendants fail to point to anything that could support an inference that plaintiff received some sort of additional guidance or advance notice regarding the type of conduct that was prohibited.  Although defendants point to the fact that plaintiff received a copy of Waupun prison's inmate handbook, nothing in that handbook would give a reasonable

prisoner notice that DOC § 303.20 was construed by prison officials as prohibiting prisoners from exchanging the type of document at issue here.

In fact, not only did the prison fail to provide guidance that the affidavit fell within the scope of DOC § 303.20(3), but the prison's own policies suggested the exact opposite. E.g., Rios v. Lane, 812 F.2d 1032, 1038 (1987) (finding that plaintiff did not receive fair notice that possessing document was prohibited when the information in the document was copied from materials in the prison's own library).  For example, plaintiff points out that DOC § 303(2)(b) expressly exempts "group petitions to courts" from its general prohibition on gang activity.  Although plaintiff's affidavit may not qualify technically as a "group petition," DOC § 303(2)(b) can be read as indicating that the prison would not construe DOC § 303.20(3) as prohibiting prisoners from circulating documents such as the one plaintiff prepared.  Plaintiff also notes that until August 2012, the prison operated a dedicated mail route for prisoners' legal matters that they could use for "gather[ing] evidence, information or affidavits" and for "sending legal documents to another inmate." Although this legal route was abolished, the prison advised inmates that they could still send each other the same legal materials via regular U.S. mail.  Further, the Waupun inmate handbook contains extensive rules expressly authorizing inmates to assist each other in legal matters, use the prison's notary services for the preparation of affidavits and exchange legal documents among themselves.  Finally, plaintiff points out that he had previously sent a nearly identical affidavit to Wheeler and that prison officials had allowed this affidavit to

16

go through.  All of these facts, when taken together, would cause a reasonable prisoner to believe that the affidavit he prepared for Wheeler was not the type of "gang-related" document proscribed by DOC § 303.20(3).

Ultimately, "the root of the vagueness doctrine is a rough idea of fairness."  Colten v. Kentucky, 407 U.S. 104, 110 (1972).  Here, DOC § 303.20 is simply unfair as applied to plaintiff's conduct.  Accordingly, I will enter summary judgment in plaintiff's favor on his Fourteenth Amendment due process claim against defendants.

## C. Defendant Russell's Entitlement to Qualified Immunity

Defendants have also requested summary judgment on whether defendant Russell is entitled to qualified immunity from suit.  (They do not argue that defendant O'Donovan is entitled to qualified immunity.)  To establish that Russell is entitled to qualified immunity, they must demonstrate that his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  I conclude that the constitutional rights at issue were clearly established at the time of their violation.  Accordingly, defendants are not entitled to qualified immunity.

Since the Supreme Court's decision in Turner v. Safley, 482 U.S. 78 (1987), it has been well-recognized that prison officials can interfere with prisoners' freedom of speech only if doing so is "reasonably related to legitimate penological interests."  Turner, 482 U.S. at

17

88.  Defendant Russell knew, or should have known, that he could not confiscate plaintiff's affidavit and issue him a conduct report without a valid penological justification.  Although defendants cite a number of valid reasons for confiscating inmate mail, such as when it "poses a threat to safety or security of the institution," they have never explained how plaintiff's affidavit implicates any of these concerns.  Defendant Russell should have known that the bald assertion that plaintiff's affidavit was "gang-related," without more, is not enough to justify its confiscation and destruction.

Defendant Russell also knew, or should have known, that plaintiff was entitled to fair notice that DOC § 303.20(3) prohibited him from sending the affidavit to Wheeler before Russell could discipline him for such conduct.  The constitutional principle that individuals cannot be punished for conduct unless they had prior notice that their conduct was proscribed is well-recognized.  Moreover, the Court of Appeals for the Seventh Circuit has previously called DOC § 303.20(3)'s clarity into question.  Toston v. Thurmer, 689 F.3d at 832.  Finally, neither defendant Russell nor defendant O'Donovan gave plaintiff any prior notice that sending such a document might land him in segregation for nearly a year.

### D. Relief Available

Defendants argue that they are entitled to summary judgment on the ground that various forms of relief sought by plaintiff are unavailable.

First, defendants assert that expungement is available only in a state court writ of

18

certiorari proceeding. This is not correct. Although expungement is often sought in state court writ of certiorari proceedings, none of the authorities defendants cite establish that expungement is available only in such proceedings. Indeed, federal courts have expunged conduct reports in other Section 1983 cases.  E.g., Ware v. Heyne, 575 F.2d 593, 596 (7th Cir. 1978) (upholding district court decision to expunge bad conduct report obtained in violation of prisoner's constitutional rights).  Defendants have shown no reason why this court's authority to issue injunctive relief does not include the authority to expunge a conduct report. This also disposes of defendants' claim that plaintiff is not entitled to a permanent injunction because he has "failed to show that he suffered any irreparable injury as a result of defendants' actions."  Without an injunction ordering defendants to expunge his conduct report, he would be harmed irreparably.

Second, at a trial, plaintiff will be entitled to present evidence in support of the amount of damages he believes he is entitled to, if any, as well as evidence related to whether he is entitled to a punitive damages award.  I cannot say from the present record that no reasonable jury could find that defendants acted with "reckless or callous indifference" to plaintiff's First Amendment and Fourteenth Amendment rights.  Smith v. Wade, 461 U.S. 30, 56 (1983).  Plaintiff will have the opportunity to make such a showing.

Third, defendants argue that plaintiff is not entitled to a declaratory judgment because his claim fails on the merits. This argument is rejected.  Plaintiff has established that he is entitled to summary judgment on his claims that defendants violated his First

19

Amendment rights and his Fourteenth Amendment rights. I will enter judgment accordingly.


ORDER

IT IS ORDERED that

1.      Defendants Todd Russell's and John O'Donovan's motion for summary judgment, dkt. #28, is DENIED.

2.       Plaintiff Joeval Jones's motion for summary judgment, dkt. #17, against defendants Todd Russell and John O'Donovan is GRANTED.  It is DECLARED that defendants violated plaintiff's First Amendment and Fourteenth Amendment rights by confiscating the affidavit plaintiff sent to Wheeler and by punishing him for possessing that affidavit. Defendants are ordered to expunge plaintiff's prison records of the conduct report he received for allegedly violating DOC § 303.20.

3.      A trial will be held on the issue of plaintiff's damages on the previously

scheduled July 25, 2016 trial date.

Entered this 9th day of December, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

21